TAYLOR *v.* STATE

[No. 268, September Term, 1964.]

426　

*Decided April 28, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, SYBERT and BARNES, JJ.

*Robert V. Lazzaro* for appellant.

*John C. Cooper, III, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr.* and *Stanley S. Cohen, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City* on the brief, for appellee.

PRESCOTT, C. J., delivered the opinion of the Court.

Appellant, whose "nom de plume" is "killer" and who went to the sixth grade "in the street" and to the ninth "in the penitentiary," was convicted in the Criminal Court of Baltimore by Judge Grady, sitting without a jury, of two cases of robbery with a deadly weapon, one case of assault with intent to murder, one case of carrying a concealed weapon, and one case of receiving stolen goods.

He contends that the court erred: (1) in admitting several confessions made by him because (according to his brief) (a) he was not advised of his right to have the assistance of counsel, of his right to remain silent, or that any statement he made could be used against him, (b) he was interrogated over a period of 2½ days, during which time he made four separate statements, and (c) the statements were taken during a period of illegal detention, because he had been illegally arrested and he was not taken before a magistrate in a reasonable time after his arrest; and (2) the evidence was insufficient to support his conviction of assault with intent to murder.

It will not be necessary to set forth the facts at great length, for the appellant recognizes that, even with his assumption of facts in his favor (which, in reality, were uncontradicted statements that he was advised of his right to have counsel and also advised that he had a right to remain silent) in order for him to prevail in this appeal it would require our overruling several previous decisions of this Court.

The State produced evidence of three armed robberies. The first, on January 6, 1964, occurred at Schwartz's Delicatessen. The operator of the establishment identified appellant as one of the participants. The second, on January 15, 1964, took place at the Maryland Restaurant. The third, on January 16, 1964, was effectuated at the Sportman's Bar. The victim testified that "two colored persons" entered the bar and robbed him at pistol point. A gun fight ensued in which the victim was shot in the chest and he, in turn, fired four shots at the robbers while they were running away. He believed his shots had struck, at least, one of them. He immediately called the police.

Sgt. Hartnett responded to the call. He testified that he and other officers found bloodstains in the snow, and followed the trail of blood to 1632 Miller St. A knock on the door was answered by the appellant, and inside the small house were two other Negroes, a Melvin Cornelius and a William Belton. Belton was in bed suffering from a gunshot wound in his shoulder. He was arrested and taken to the hospital. Not knowing how many persons were involved in the robbery, Sgt. Hartnett made no other arrests at that time, but returned to the scene of the hold-up. There, he was informed by Lt. Kummer, who was leading the investigating force, that four persons had participated in the robbery—two inside and two outside—and by a woman bystander he was informed that they were "colored males."

Sgt. Hirsch, who accompanied Hartnett when appellant was placed under arrest, said that he had information that four persons were involved in the robbery. He questioned "various people throughout the neighborhood." From one particular female, he learned that two men were "standing immediately outside the door," at about the time of the robbery. Upon approaching the door of the bar, one woman was told by one of the two males outside, "just go on about [your] business, not [sic] worry about what [is] happening inside the tavern."

After receiving this information, Sgts. Hartnett and Hirsch returned to 1632 Miller St., where, after waiting a short time for him to return, they arrested appellant at 12:20 a.m. on January 17th.

Appellant was questioned "only for a few minutes" after he was brought in. Thereafter, according to Lt. Kummer, who conducted the interrogations of appellant together with Sgts. Hartnett and Hirsch, he was questioned on January 17th from 7:00 a.m. until 10:20 a.m., on January 18th from 3:55 a.m. until 4:15 a.m., and on January 19th from 9:55 a.m. until 11:10 a.m., when appellant, after he had been confronted by Belton and Cornelius, began the first of four confessions which were taken and transcribed through 4:25 p.m., of that day.[1] During all of the period of his detention, appellant was fed the regular prison meals at the standard times, and he was given extended periods when he could rest and sleep.

Lt. Kummer testified that he informed appellant of his right to have an attorney and his right to remain silent, that appellant made no request for an attorney, and the statements were freely and voluntarily made. There was no contradiction of these statements. Appellant's statements were taken in question and answer form, and the first three show that before he made any criminating statements he was stopped and specifically told that "before you say anything" the interrogator wanted him to know that anything he said "must be free and voluntary on your part," also the interrogator could "not promise [him] anything," the appellant was not being threatened in any manner, and anything he said might be used for or against him in court. After being so informed and asked if he understood what the officer was saying, he was asked, "Do you still want to tell us about the holdup?" He replied, "Yes, sir." There is no contention that these statements were not taken in the precise manner that they purport to have been taken, and it would scarcely seem necessary, after three such admonitions in the course of one afternoon, to require its repetition to the traverser, who was no

---

1. The other officers' testimony as to the exact times that appellant was questioned differed slightly, but not enough to be of substantial significance.

novice in the commission of crime, having had two previous convictions of robbery and one of the larceny of an automobile, before taking his fourth statement.

# I
## (a)

This contention requires no elaborate discussion. It is based entirely upon the false premise that the evidence established that appellant had not been informed of his right to the assistance of counsel, of his right to remain silent, or that his statements could be used against him. It is not necessary here to state our views as to effect (if any) upon the result of our decision that a failure to inform appellant of any one or more of the matters mentioned might have had. An examination of the evidence, as we set it forth above, discloses there was credible testimony, not denied or contradicted by anyone, sufficient to support a finding by the trial court that the appellant had been informed on all three of the matters. We find no error here. (As a matter of fact, this point was not seriously pressed below. The stress was placed upon an alleged illegal arrest of the appellant, which we consider below.)

## (b) and (c)

Appellant here contends that his arrest was illegal; hence his statements were inadmissible. We have repeatedly held that the admissibility, *vel non,* of a confession is to be determined by whether, under the totality of the attendant circumstances, the confession was freely and voluntarily given. If freely and voluntarily given, it is admissible; if not, it is inadmissible. And neither the legality nor illegality of the arrest, although properly considered in the totality of circumstances, is critical in a determination of the voluntariness of a confession. *Prescoe v. State,* 231 Md. 486; *Mefford and Blackburn v. State,* 235 Md. 497, *cert. den.* 380 U. S. 937. The general rule regarding the admissibility of confesssions is correctly stated in *Abbott v. State,* 231 Md. 462, but we do not deem it necessary to repeat it here.

However, if the alleged illegality of the arrest were pertinent here, we think the undisputed facts disclose that the arrest was

lawful. We have, on many occasions, stated the rule as to when an officer may legally arrest a person, without a warrant, for a felony. See, for examples, *Mulcahy v. State,* 221 Md. 413; *Edwardsen v. State,* 231 Md. 332; *Drouin v. State,* 222 Md. 271. Our decisions thereon, in the main, are based upon what was said in *Brinegar v. United States,* 338 U. S. 160. When the police, working in co-ordination in an attempt to solve a reported crime, have acquired sufficient information (by facts within their own knowledge and of which they have reasonably trustworthy information) to establish in the mind of a prudent man a belief that the alleged crime has probably been committed and that the arrestee was probably involved therein, and this information is transmitted to the arresting officer, he may lawfully arrest. *Farrow v. State,* 233 Md. 526; *Beck v. Ohio,* 379 U. S. 89.

Appellant seems to recognize this rule, but claims that the information given to Sgt. Hirsch by the unidentified female that two "colored males" were on the outside at about the time of the robbery and one steered a prospective patron of the bar away, was not "reasonably trustworthy information"; hence the officers failed to have probable cause to make the arrest. With this contention, we are unable to agree. As was stated in *Brinegar, supra,* by the Supreme Court, "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests." Where officers are investigating a crime which occurred just minutes before, and the officers have been told that shots had been fired at fleeing robbers, and they have traced blood stains in the snow to a house wherein are a wounded man, the appellant and another, (all "colored males") and they are told by an eye-witness that two men ("colored males") were on the outside and stopped a woman from going into the bar, it would be entirely impractical and unrealistic to require the officer to stop his investigation of the crime and inquire into the witness' trustworthiness. See *Drouin v. State,*[2] *supra,* where neighbors gave the officers information which helped to estab-

---

2. We discussed in this case in some detail the circumstances under which an informer had to be produced by the State.

lish probable cause, and *Shorey v. State*, 227 Md. 385, where the same principle was applied. It could be argued with equal force as that claimed above that the police should not be allowed to accept, in evaluating probable cause, information (often given hurriedly and by telephone) that a felony had been committed, without first checking the trustworthiness of the informant. It will be noted that this class of evidence is not admitted as substantive evidence to assist the State in establishing guilt, but simply for the purpose of determining whether the officers had probable cause so as to make the arrest legal.

In addition, if the above contention were upheld, it would disregard the information received by Lt. Kummer and conveyed to Sgt. Hartnett, one of the arresting officers, that four persons were involved in perpetrating the robbery.

We hold that appellant's arrest, made under the circumstances described above, was legal.

Appellant also contends that his statements were rendered inadmissible by Code (1964 Supp.), Article 26, Section 115. In creating the Municipal Court of Baltimore City in 1961, the Legislature included said Section 115. It provides, in part, that if anyone is arrested in Baltimore City (for other than motor vehicle charges), it shall be the duty of the officer making the arrest to take such person before a judge of the criminal division of the Municipal Court, and if any offense charged against the person is beyond the jurisdiction of the said court, the judge of the criminal division shall sit as a committing magistrate "with the same powers and duties as were vested in and imposed upon the justices of the peace assigned to the station houses of Baltimore City on the day preceding the effective date of this subtitle * * *." Appellant argues that the Section required that he be taken before one of the judges of the Municipal Court immediately after his arrest. We do not so read the statute. It is clear to us that the Section was transitional in nature: it placed certain duties and functions that had formerly been exercised by justices of the peace within the jurisdiction of the judges of the new Municipal Court. The subtitle gave these new judges authority and jurisdiction to try certain criminal cases, and Section 115 provided that in cases beyond that jurisdiction, the judges should sit as committing magis-

trates. No time limit is set in the Section as to when it is compulsory that an arrested person be taken before one of the judges; and no mention is made to the effect that a failure to take such a person before one of the judges by a specified time shall render a voluntary confession inadmissible. Had the Legislature so intended, it would have been a very simple task to manifest such intention. We hold that the failure to take the appellant before a judge of the Municipal Court prior to his confessions did not render them inadmissible.

Nor do we think that the period of time from his arrest to when appellant began his four statements, something less than 2½ days during which he was interrogated—at well separated intervals—for a total of about 4 hours, made them inadmissible. Repeating what we said above, the critical test of their admissibility depended upon whether the totality of the circumstances surrounding their making disclosed that the statements were freely and voluntarily made. Involved here is an accused, who had had previous experiences with the law; he was fed regularly and allowed substantial rest periods; and no threats of physical violence, promises of inducement, or psychological coercion are claimed. We find no evidence that his will was overborne. We, therefore, hold that appellant's statements were not rendered inadmissible on this last mentioned ground. *Prescoe v. State, supra; Green v. State,* 236 Md. 334; *Gallegos v. Nebraska,* 342 U. S. 55 (15 days involved); Anno., 19 ALR 2d 1331 § 5.

Appellant makes an additional contention in regard to a short detention between his statements and his appearance before a magistrate. It has little significance here. "The critical period is that between arrest and confession. 'Detention after a confession plainly does not affect its admissibility.'" *Jackson v. United States,* 313 F. 2d 572 (District of Columbia).

(2)

Appellant finally challenges the sufficiency of the evidence to support his conviction of assault with intent to murder. The offense is a creature of statute, Code (1957), Art. 27, § 12, and requires proof of an assault, coupled with an intent to murder, either in the first or second degree; but specific intent to

take life is not an essential ingredient thereof. The question of one's state of mind, or his intention, at a particular time is one of fact, and is subjective in nature. Therefore it must be determined by a consideration of his acts, conduct and words. *Midgett v. State,* 216 Md. 26; *Bird v. State,* 231 Md. 432. And the determination of an accused's intention is, in the first instance, for the trial judge, when sitting without a jury, and this determination will not be disturbed by this Court unless clearly erroneous. Maryland Rule 886 a. An intent to murder may, under proper circumstances, be inferred by the use of a deadly weapon directed at a vital part of the human body, as was the case here. *Wimbush v. State,* 224 Md. 488. We hold that the evidence was sufficient to support appellant's conviction.

*Judgments and sentences affirmed.*