229 So.2d 855 (1969)
Emmett James PARAMORE, Appellant,
v.
The STATE of Florida, Appellee.
No. 37178.
Supreme Court of Florida.
September 10, 1969.
Rehearing Denied October 10, 1969.
*857 Richard M. Gale, Miami, for appellant.
Earl Faircloth, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
ADKINS, Justice.
The appellant was convicted of murder in the first degree without recommendation for mercy and has appealed to this Court from the judgment of conviction as authorized by § 4(2), Art. V, Constitution of Florida, F.S.A.
The deceased Stephens, a bakery truck salesman, went into a market in the City of Miami to deliver some bakery goods. While Stephens was inside the market, the appellant and several other individuals entered the back of Stephens' truck, apparently for the purpose of stealing some of the bakery goods within the truck. When Stephens returned to the truck he found the boys and an altercation ensued within the truck. All of the individuals except the appellant escaped and fled the scene. The appellant drew his pistol and, as he aimed it, Stephens begged him not to shoot, saying "please, please." Appellant ignored the pleading of Stephens and shot him.
All of this occurred during business hours and in the presence of five eye-witnesses whose testimony, aside from the usual variations in eye-witness testimony, sustained the above statement of facts.
Appellant first complains because three jurors were excused for cause, contending that this was in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, wherein the United States Supreme Court held a sentence of death could not be carried out if the jury that imposed it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. The decisions of this Court have long been in accord with the holding in the Witherspoon case, supra. See Campbell v. State, Fla., 227 So.2d 873. Opinion Filed June 11, 1969.
Fla. Stat. § 932.20, F.S.A., provides that no person whose opinions are such as to preclude him from finding any defendant guilty of an offense punishable with death shall be allowed to serve as a juror in the trial of any capital case. The statute does not disqualify a person merely because he may have "conscientious scruples against the infliction of capital punishment for murder." To be disqualified to serve as a juror in the trial of a capital case, the "opinions" of the person must be "such as to preclude him from finding any defendant guilty of an offense punishable with death." Savage v. State, 18 Fla. 909 (1882); Boyington v. State, 74 Fla. 258, 76 So. 774 (1917); Olive v. State, 34 Fla. 203, 15 So. 925 (1894); Piccott v. State, 116 So.2d 626 (Fla. 1960); Sims v. State, 184 So.2d 217 (Fla.App.2d Dist. 1966); Campbell v. State, supra. See also 14 F.L.P., Jury, § 156.
In the case sub judice, juror Turner on voir dire examination stated that he *858 had objections to capital punishment and would be unable to return a verdict that carried with it the death penalty. Juror Troy stated "it would be a little hard to bring the death penalty for anybody" and she would be unable to bring a verdict without a recommendation of mercy. Prospective alternate juror Owens said that he had objections to capital punishment and he was "afraid" he would have trouble with a verdict carrying with it the death penalty. The alternate juror who was subsequently selected did not participate in the deliberations.
When the whole examination on voir dire is considered and construed in the light of the above authorities, together with Pitts v. State, 185 So.2d 164 (Fla. 1966), we find nothing wrong with the actions of the trial court in dispensing with the services of these jurors.
There is a second reason for affirming this action of the trial judge. If defendant objects to a prospective juror being excused he should make his objection before the juror is excused. Ellis v. State, 25 Fla. 702, 6 So. 768 (1889). When these three prospective jurors expressed their convictions against the infliction of the death penalty, appellant's attorney made no effort to qualify them for service. Perhaps he did not want them for some other reason. It was not the duty of the trial court to take other steps toward attempting to qualify the veniremen, and the Witherspoon case, supra, should not be construed as imposing this additional duty upon the trial court in the absence of any expression of a desire by defense counsel to keep the prospective jurors. Pittman v. State, 434 S.W.2d 352 (Tex.Cr.App. 1968). See also State v. Forcella, 52 N.J. 263, 245 A.2d 181 (1968). The appellant is in no position to complain in the instant case because no objection was interposed, nor did defense counsel attempt to clarify the juror's attitude as it related to his or her ability to decide the issues impartially.
Furthermore, the State had more than enough remaining peremptory challenges available to have removed those prospective jurors had the trial judge declined to do so. See Campbell v. State, supra; State v. Mathis, 52 N.J. 238, 245 A.2d 20; People v. Speck, 41 Ill.2d 177, 242 N.E.2d 208 (1968). Although this fact may be considered in sustaining the action of the trial judge, we should hesitate in conjecturing that the prosecutor would have used his peremptory challenges to excuse all such jurors. In Re Anderson, Cal., 73 Cal. Rptr. 21, 447 P.2d 117 (1968).
Appellant objects to the introduction of a video tape confession contending that it was obtained only after a false inducement by the police officer that it would be of benefit to the appellant. Actually, the officer explained that the tape would be used for court purposes and would be an exact statement of what appellant said, so there could be no mistake. This was the purported benefit. Appellant's main concern was that his mother would see the tape on television, but he was assured that it would be used only in court.
A confession of guilt freely and voluntarily made is not rendered inadmissible because it appears to be induced by deception practiced by the officers, Denmark v. State, 95 Fla. 757, 116 So. 757 (1928), or by the accused being told it would be easier on him if he told the truth, Ebert v. State, 140 So.2d 63 (Fla.App.2d Dist. 1962), or by an officer's statement that only by confessing could the defendant escape the death penalty. Milton v. Cochran, 147 So.2d 137 (Fla. 1962). In the case sub judice there was no misrepresentation and the appellant was adequately warned as to his constitutional rights. The voluntariness of the confession was a mixed question of fact and law which was decided first by the trial judge and then by the jury based on the evidence adduced. There was sufficient evidence to support the finding that the confession was freely and voluntarily made and this finding will not be disturbed. *859 Foreman v. State, 213 So.2d 754 (Fla.App. 1st Dist. 1968); Young v. State, 140 So.2d 97, 99 (Fla. 1962).
Another ground asserted by appellant for excluding the video tape confession is the failure of the State to establish a continuity of possession of the "easily alterable tape." It appears from the evidence that the video tape was an accurate reproduction of the entire interview between the officer and the appellant. This being shown, it was not necessary for the State to prove a continuity of possession in order to have the video tape admitted into evidence. The rule governing admissibility into evidence of photographs applies with equal force to the admission of motion pictures and video tapes. Grant v. State, 171 So.2d 361 (Fla. 1965).
In People v. Hayes, 21 Cal. App.2d 320, 71 P.2d 321 (1937), the California Appellate Court considered the question of whether a defendant's voluntary confession should be produced to the jury through the medium of sound motion pictures. In holding such evidence to be admissible the Court said:
"We are satisfied that it should, and that it stands on the same basis as the presentation in court of a confession through any orthodox mechanical medium, that is, there is a preliminary question to be determined by the trial judge as to whether or not the sound moving picture is an accurate reproduction of that which it is alleged occurred. If after a preliminary examination, the trial judge is satisfied that the sound moving picture reproduces accurately that which has been said and done, and the other requirements relative to the admissibility of a confession are present, i.e., it was freely and voluntarily made without hope of immunity or promise of reward, then, not only should the preliminary foundation and the sound moving picture go to the jury, but, in keeping with the policy of the courts to avail themselves of each and every aid of science for the purpose of ascertaining the truth, such practice is to be commended as of inestimable value to triers of fact in reaching accurate conclusions.
"This particular case well illustrates the advantage to be gained by courts' utilizing modern methods of science in ascertaining facts. The objection is frequently heard in criminal trials that a defendant's confession has not been freely and voluntarily made, he testifying that it was induced either by threats or force or under the hope or promise of immunity or reward, which is denied by witnesses on behalf of the People. When a confession is presented by means of a movietone the trial court is enabled to determine more accurately the truth or falsity of such claims and rule accordingly."
The Hayes case, supra, has been followed by many other jurisdictions: State v. Perkins, (1947), 355 Mo. 851, 198 S.W.2d 704, 168 A.L.R. 920; People v. Dabb, 32 Cal.2d 491, 197 P.2d 1 (1948); Williams v. State (1951), 93 Okla. Cr. 260, 226 P.2d 989; Ray v. State (1952), 213 Miss. 650, 57 So.2d 469; State v. Spencer (1953), 74 Idaho 173, 258 P.2d 1147; Monroe v. United States (1956), 98 U.S.App.D.C. 228, 234 F.2d 49; and State v. Melerine (1959), 236 La. 881, 109 So.2d 454.
We conclude that the video tape confession was properly received in evidence.
Finally, the appellant seeks reversal because "recurring harmful conduct of the Judge and prosecutor denied the defendant his right to a fair trial and due process of law."
The assistant state attorney and the attorney for appellant were zealous advocates who performed their duties with all their talent, vigor and persuasion. The trial became so heated that on one occasion, in the absence of the jury, the Court stated there was no reason for defense counsel "to scream at the Bench." As stated by defense counsel, in the absence of the jury, *860 "sometime I get emotional about these cases, especially when I have to defend a man's life." In fact, defense counsel during the trial admitted that he would probably be held in contempt before the trial was over. After repeated warnings throughout the trial, the Judge finally held both defense counsel and the assistant state attorney in contempt of Court for the express reason that both had violated the previous order of the Court.
The law requires that juries be composed of persons of sound judgment and intelligence, and it will not be presumed that they are led astray, to wrongful verdicts, by the impassioned eloquence and illogical pathos of counsel. Tyson v. State, 87 Fla. 392, 100 So. 254 (1924). It is well settled that the comments of counsel in the progress of a trial before a jury are controllable in the judicial discretion of the trial court, and an appellate court will not interfere with the exercise of such discretion unless a clear abuse thereof has been made to appear. See 6 F.L.P., Criminal Law, § 538. When an improper statement is made by counsel before it is practicable for the Court to prevent its utterance, the Court should visit upon such counsel prompt and fitting rebuke so as to impress on the jury the gross impropriety of being influenced thereby. Akin v. State, 86 Fla. 564, 98 So. 609 (1923); Gluck v. State, 62 So.2d 71 (Fla. 1952). A better practice is to require the retirement of the jury before rebuking counsel for the defendant, Olive v. State, 131 Fla. 548, 179 So. 811 (1938), but the failure of the Court to excuse the jury before rebuking defense counsel does not, in itself, constitute reversible error. Baisden v. State, 203 So.2d 194 (Fla.App.4th Dist. 1967).
The trial judge held both defense counsel and the assistant state attorney in contempt of Court, so he played no favorites. Both had disobeyed the direct command of the Judge and the finding of contempt was necessary in order to maintain the dignity of the law in the courtroom. The defense counsel aided in the disruption of an orderly trial, and, under the circumstances, we do not think that the finding of contempt in the presence of the jury warrants a reversal. See Henderson v. State, 94 Fla. 318, 113 So. 689 (1927); Gurr v. State, 150 Fla. 65, 7 So.2d 590 (1942); Williams v. State, 69 So.2d 766 (Fla. 1953); Robles v. State, 210 So.2d 441 (Fla. 1968).
Reprimands, in order to constitute reversible error, must prejudice the party whose counsel was rebuked. Whether a new trial should be granted under such circumstances is subject to the trial judge's discretion, as he is in a better position to determine the effect of such rebuke or reprimand. Ward v. Hopkins, 81 So.2d 493 (Fla. 1955).
Appellant complains that the final argument of the assistant state attorney was improper in that he charged defendant's counsel with "using tricks" and with "badgering witnesses," stated that a life sentence is not inviolate, and read passages from the Bible.
It is extremely difficult to definitely state at what point the line should be drawn between what is doubtfully permissible argument and what is clearly wrong. All legitimate argument and full exercise of the forensic talents of the public prosecutor should be permitted and encouraged rather than cramped and denied. However, such arguments are much more effective when kept within proper bounds.
The statement of the prosecutor in closing argument that a life sentence is not inviolate is an improper argument, but is not so prejudicial as to warrant a new trial. Singer v. State, 109 So.2d 7 (Fla. 1959). In fact, it is common knowledge that all persons convicted of crime are subject to parole. See Burnette v. State, 157 So.2d 65 (Fla. 1963).
The reading of passages from the Bible is not ground for reversal. Counsel *861 should not be so restricted in argument as to prevent references by way of illustration to principles of divine law relating to transactions of men as may be appropriate to the case. See 88 C.J.S. Trial § 181; Kabase v. State, 31 Ala.App. 77, 12 So.2d 758 (Ala.App. 1943). This is a matter within the discretion of the trial judge and appellant has failed to show an abuse of this discretion.
Although the sufficiency of the evidence was not raised on appeal, we have nevertheless reviewed the evidence to determine if the interest of justice requires a new trial. Fla. Stat., § 924.32(2), F.S.A. We find that the evidence is sufficient to support the judgment.
The judgment of the lower court should be and is hereby
Affirmed.
ERVIN, C.J., ROBERTS, DREW, CARLTON and BOYD, JJ.; and MASON, Circuit Judge, concur.