PEOPLE *v* HEADING

PEOPLE *v* GRENIER

1. INDICTMENT AND INFORMATION—RES GESTAE WITNESSES—LATE INDORSEMENT—ACCOMPLICES—PREJUDICE.

Allowing the late indorsement on the information of a *res gestae* witness who was arrested with the defendants did not constitute an abuse of discretion where the witness had been charged in juvenile court as an accomplice to the crime with which defendants were charged and had not been cleared of that charge until the first day of defendants' trial where the defendants had knowledge of the witness and could have found out that she had been turned over to juvenile authorities, and where the trial court granted defendants a recess of ample time to investigate and prepare adequate cross-examination, because the prosecutor need not indorse accomplices and because the defendants showed no prejudice.

2. CRIMINAL LAW—WITNESSES—INTERVIEW BY DEFENSE—PRESENCE OF JUDGE.

The presence of the trial judge when defense counsel first interviewed in chambers a *res gestae* witness, after the judge had allowed the witness's late indorsement, did not constitute reversible error where defense counsel did not request the judge to leave, even though the judge had offered to leave, and the judge was not subsequently called upon to consider the admissibility of the witness's testimony nor to make any preliminary determinations of fact thereon.

3. CRIMINAL LAW—EVIDENCE—VIDEO-TAPED LINEUP—ADMISSIBILITY.

A video tape of a lineup at which the defendant was identified may not replace the identifying party's testimony; if the

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.
[2] 21 Am Jur 2d, Criminal Law § 329.
[3, 4] 21 Am Jur 2d, Criminal Law §§ 333, 337, 341, 368.
[5–8] 21 Am Jur 2d, Criminal Law §§ 368, 369.
    29 Am Jur 2d, Evidence § 801.
[9] 21 Am Jur 2d, Criminal Law § 235.

identifier does not testify, the defendant is denied his right
of confrontation by use of the tape.

4. CRIMINAL LAW—EVIDENCE—VIDEO-TAPED LINEUP—ADMISSIBILITY.

The video tape of a lineup at which the defendant was identified
is properly submitted to the jury, where the propriety of the
lineup has not been challenged, because the jury can then
consider the circumstances of the lineup for its determination
of the weight and credibility the identification should be
given.

5. EVIDENCE—VIDEO TAPE—ADMISSIBILITY—FOUNDATION.

A video tape, a motion picture synchronized with a sound re-
cording, may be received into evidence if the offering party
lays the foundation necessary to admit a motion picture and
the foundation necessary to admit a sound recording.

6. CRIMINAL LAW—EVIDENCE—VIDEO-TAPED LINEUP—ADMISSIBILITY.

Admitting into evidence only the video portion of the video
tape of the lineup at which defendants were identified was
not error when the trial judge properly exercised his discretion
to exclude the audio portion because it was garbled and the
foundation for admittance of the video portion was laid
through the testimony of a police officer who was present at
the lineup.

7. EVIDENCE—VIDEO TAPE—ADMISSIBILITY—FOUNDATION.

The video portion of a video tape, like a still photograph, is
admissible in evidence if someone familiar, from his own ob-
servation, with the scene photographed testifies that it is an
accurate representation of that scene; the photographer need
not be the one to so testify.

8. CRIMINAL LAW—EVIDENCE—OTHER CRIMINAL CHARGES—VIDEO-
TAPED LINEUP.

An inadvertent and momentary glimpse by the jury, when view-
ing a video tape of the lineup in which the defendant had
been identified, of the video tape of another lineup in which
the defendant participated and which was not a lineup per-
tinent to the instant case did not entitle the defendant to
a mistrial on the ground that the jury was improperly made
aware of other charges pending against him where nothing
in the tape suggested that that lineup was for another crime
and no evidence or testimony was presented to make the jury
aware of that fact.

9. Criminal Law—Presentation of Defense—Confiscation of Defendant's Notes.

> Defendant's contention that his allegedly extensive trial notes were taken from his cell during a "shakedown" by jail authorities and that the taking of the notes interfered with the presentation of his defense is without merit where the trial court examined, out of the presence of the jury, all officials involved in the "shakedown", defendant was allowed to testify regarding his notes without relinquishing his right not to testify before the jury, and the court's finding that there was no proof that the notes were taken, let alone that they never existed, was supported by the record.

Appeal from Bay, Philip J. Glennie, J. Submitted Division 3 November 3, 1971, at Lansing. (Docket Nos. 9264, 9336.) Decided March 21, 1972. Leave to appeal applied for.

Richard E. Heading, Jr., and Peter L. Grenier were convicted of armed robbery and kidnapping. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eugene C. Penzien,* Prosecuting Attorney, for the people.

*James G. Orford,* for defendants on appeal.

Before: Danhof, P. J., and Bronson and Targonski*, JJ.

Bronson, J. After a joint jury trial in the Bay County Circuit Court, defendants were convicted of armed robbery (MCLA § 750.529 [Stat Ann 1971 Cum Supp § 28.797]) and kidnapping (MCLA § 750.349 [Stat Ann 1954 Rev § 28.581]). Defendants were represented by separate counsel. Each defendant now appeals the denial of his motion for a new

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

trial. This Court ordered the cases consolidated for hearing on the merits.

During the second day of trial, the trial court granted the prosecution's motion for leave to indorse on the information the name of one Rosemary Weisheim and to call her as a prosecution witness. Defense counsel objected then and renew their objections now.

The prosecution must indorse on all informations filed by it the names of all *res gestae* witnesses known to it at the time of filing. MCLA § 767.40 (Stat Ann 1971 Cum Supp § 28.980). The late indorsement of witnesses on an already filed information is a matter within the trial judge's discretion. *People* v *Cormandy* (1969), 16 Mich App 517. Similarly, when a late indorsement of a witness is allowed, the granting to the defense of a continuance is a matter of discretion. *People* v *Cormandy, supra.* We do not believe that the trial judge in this case abused his discretion.

Miss Weisheim was arrested with defendants and charged in juvenile court as an accomplice. She was not cleared of such charges until the first day of defendants' trial. The prosecution need not indorse individuals charged as accomplices. *People* v *Chaney* (1970), 21 Mich App 120; *People* v *Geer* (1970), 22 Mich App 47. Therefore, it was not improper for the prosecution to withhold her name from the information until she had been cleared of complicity in the affair.

Defendants have not convinced us that the late indorsement of Miss Weisheim prejudiced the preparation and presentation of their case. See *People* v *Lee* (1943), 307 Mich 743, 750; *People* v *Schoonover* (1943), 304 Mich 355, 362; and *People* v *Talison* (1970), 21 Mich App 459, 463. Prior to their joint arrest, Miss Weisheim had spent the entire day with

defendants and defendant Grenier's stepson. She was an acquaintance of the stepson. It is inconceivable that defense counsel, after interviewing their clients, did not know and could not find the name of their female passenger and that she had been turned over to the juvenile authorities. In addition, the trial judge granted defendants a four-day recess. Counsel had ample time to investigate Miss Weisheim and to prepare adequate cross-examination.

Defendants next claim it was error for the trial judge to have been present when their counsel first interviewed Miss Weisheim in chambers. Defendants have shown no prejudice by the trial judge's advance knowledge of Miss Weisheim's probable testimony. Subsequent to permitting her late indorsement, the trial court was not called upon to consider the admissibility of any part of her testimony nor to make any preliminary determinations of fact based thereon. Furthermore, the trial judge offered to absent himself from the interview, but defense counsel did not think that necessary.

Shortly after their arrest defendants were identified by the victim in a lineup. That lineup was recorded on video tape, and the tape was accepted into evidence as a prosecution exhibit. Defendants' counsel was present at the lineup. Defendants do not challenge the propriety of the lineup. However, they do challenge the video tape's admission into evidence.

Defendants argue that the video tape of the lineup violated defendants' privilege against self-incrimination. We disagree. Participation in a lineup does not compel a defendant to be a witness against himself. *United States* v *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149). Participants in a lineup may be required to make gestures, wear specified clothes, or give voice samples. *Schmerber*

v *California* (1966), 384 US 757 (86 S Ct 1826, 16 L Ed 2d 908); *United States* v *Wade, supra.* As video tapes merely reproduce an accused's physical participation in a lineup, they aid in reconstructing lineups for trial judges who are called upon to determine their legality; a problem alluded to in *Wade.* A mere reproduction of an accused's participation in a lineup does not involve testimony or communication by the accused and is not violative of the privilege against self-incrimination.

A video tape of a lineup, however, may not replace in-court testimony by the identifying party. If the identifier does not testify, showing the tape is hearsay evidence which denies an accused his right to confront the witnesses against him. *Cf. Bruton* v *United States* (1968), 391 US 123 (88 S Ct 1620, 20 L Ed 2d 476). In this case the victim did testify and was thoroughly cross-examined on his identification of defendants.

The legality of a lineup is a question for the trial judge. If a lineup is found to be legal, the jury is limited to determining the weight and credibility to be given to that and any subsequent identification. *People* v *Walker* (1965), 374 Mich 331, 337–338; *People* v *Hutton* (1970), 21 Mich App 312. The question before us is what evidence may a jury hear in such a case. In *Walker,* a case dealing with voluntary confessions, our Supreme Court did not decide what evidence the jury could hear if the confession was admitted. The traditional rule is that all of the evidence admissible on the question of voluntariness may be shown to the jury on the question of the weight and credibility to be accorded the confession. 3 Wigmore on Evidence (3d ed), § 861, p 570; 1 Gillespie, Michigan Criminal Law & Procedure (2d ed, 1971 Cum Supp), § 527, p 214. Analogously, the circumstances of a lineup considered by the trial

court in determining the propriety of that lineup may be introduced to the jury for its determination of weight and credibility. Since the trial judge may use the video tape to determine the legality of the lineup, the jury may consider the video tape to determine the weight and credibility it should be given. As the defendants do not challenge the propriety of the lineup in which they participated, the video tape recording was properly submitted to the jury, if a proper foundation was laid for its admission.

A video tape is nothing more than a motion picture synchronized with a sound recording. Therefore, a complete video tape may be received into evidence if the offering party lays the foundation necessary to admit a motion picture and the foundation necessary to admit a sound recording.

Because it was garbled, the trial judge refused to admit into evidence the video tape's audio portion. That was within his discretion. *People* v *Cash* (1970), 28 Mich App 1, 6–7. Proper foundation was laid by the prosecution for admission of the video portion. A police officer present at the lineup testified on *voir dire* that the video portion accurately represented the lineup as he observed it to have occurred. A photograph is admissible in evidence if someone familiar, from his own observation, with the scene photographed testifies that the photograph is an accurate representation of that photographed. The photographer need not be the one to so testify. *Oppenheim* v *Rattner* (1967), 6 Mich App 554, 558. Motion pictures are treated the same as still photographs. *Rogers* v *City of Detroit* (1939), 289 Mich 86.

When the video tape was shown to the jury, the projectionist inadvertently gave the jury a momentary glimpse of another lineup in which defendant Grenier had participated moments before participat-

ing in the lineup pertinent to the instant case. The inadvertently shown footage also pictured the back of the head of some unidentified individual. On *voir dire* the court determined that this unidentified individual was the victim of another robbery with which defendant Grenier had been charged. Defendants claim that this inadvertence resulted in the jury being made improperly aware of other charges pending against defendant Grenier. We concur with the trial judge that, because the jury's glimpse of the wrong footage was only momentary and because the individual pictured in the footage was not identified to the jury as the victim of another robbery, the jury did not have before it evidence of other crimes. Defendants' motion for a mistrial was properly denied.

The final claim of error is urged on behalf of defendant Grenier only. He claims that his allegedly extensive notes on the jurors and on the first few days of trial were either deliberately taken from his cell by the jail authorities or inadvertently removed during a jail "shake-down". The disappearance of these notes allegedly interfered with his presentation of a defense. The trial judge took the time to examine, out of the jury's presence, the several police officers involved in the jail "shake-down". Defendant Grenier was allowed to testify regarding the notes without relinquishing his right not to testify before the jury. The judge concluded that "there was no proof whatsoever that such notes had been removed by such officers, or, in fact, had ever existed". That finding was supported by the record before the judge.

Affirmed.

All concurred.