Donald J. Sullivan, J.
The defendant Tyrria Higgins moves to suppress statements made to Detective John Sheridan and to Assistant District Attorney Karen Bell.
The People produced Detective John Sheridan, Assistant District Attorney Karen Bell and Lester Ferguson, a video tape technician. The People introduced Exhibit 1 in evidence, a transcript of the statement made by defendant to Assistant District Attorney Karen Bell, and Exhibit 2 in evidence, the video tape of the interrogation of defendant Assistant District Attorney Karen Bell.
The court finds that Detective John Sheridan and Assistant District Attorney Karen Bell, prior to taking the statements which are the subject of this Huntley hearing, gave the defendant his Miranda warnings; that the defendant understood said warnings; that he knowingly and willingly waived his constitutional rights; and that he thereafter made the subject statements.
The court finds that the People have established beyond a reasonable doubt that said statements were voluntary.
While defendant has not raised the question, the court will address itself to the admissibility of the video tape of defendant’s confession taken at the police precinct. In researching *914 the law in this area, the court was confronted with the lack of any reported cases in New York State. Apparently the paucity of legal precedent stems from the comparatively recent innovation of such electronic advances in the criminal justice system. The court is not without guidance however, as there are a number of reported cases in other jurisdictions dealing with this subject. Generally, these jurisdictions have approved of the admissibility of video tapes primarily in recording confessions and depositions under judicially enunciated principles.
Objections to the admission of video tape recordings in out-of-State jurisdictions are based primarily on constitutional and statutory grounds. Arguments that such evidence infringes on the right of self incrimination (5th Arndt); violates due process (5th Arndt); violates the protection against unreasonable search and seizure (4th Arndt); and denies the accused of the right to public trial (6th Arndt) , have usually been met with uniform lack of success in such States.
When referring to video tape evidence we mean real or demonstrative evidence. This has been defined as evidence addressed directly to the senses of the trier of the facts (Richardson, Evidence [10th ed], p 102, § 127).
A good description of the device was given in People v Heading (39 Mich App 126, 132): "Video-tape is nothing more than a motion picture synchronized with a sound recording”. Video tape is descriptive, corroborative and physical evidence. Compliance with standard rules of evidence regarding the admission of underlying testimonial evidence, should be sufficient basis for admission of video which records the said event.
The Missouri State court in two cases dealing with the defendant’s privilege against self incrimination under the Fifth Amendment upheld the use of video taped evidence at the trial (State of Missouri v Lusk, 452 SW2d 219; State of Missouri v Hendricks, 456 SW2d 11). In Lusk and Hendricks, the courts ruled that defendant’s confession recorded on the video medium did not violate or impair his Fifth Amendment rights. The admissibility into evidence was subject only to procedural safeguards. Providing a proper foundation was laid, and assuming the confession itself was legally admissible, there was no basis to exclude such video evidence. The court indicated that the video tape admissions of the defendant as recorded were corroborative of the testimony of the police; that such video tape expedites the ability of the trial court in *915 its determination to decide objections to the voluntariness of the confession; that it was equivalent to the presentation into evidence of a confession through any orthodox, mechanical medium; and that the tape stands on same footing as a sound motion picture. In a Federal habeas corpus petition, the court indicated that defendant’s voluntary statement recorded on video tape was not incriminatory, that is, in violation of his Fifth Amendment privilege (Hendricks v Swenson, 456 F2d 503). The tape would be incriminating and in violation of his Fifth Amendment rights only if the statement itself abridged his constitutional Fifth Amendment rights. The reasoning of the Hendricks court (supra, p 506) is persuasive: "we suggest that a video-tape is protection for the accused. If he is hesitant, uncertain or faltering, such facts will appear. If he has been worn out by interrogation, physically abused * * * the tape will corroborate him in ways a typewritten statement would not. Instead of denying a defendant his rights, we believe it is a modern technique to protect a defendant’s rights.” The court then said (pp 506-507): "we think [tape] this no more incriminates him than the taking of still pictures or blood or urine samples”.
Other cases have admitted video tape evidence after proper authentication and sufficient foundation has been laid (People v Ardella, 49 Ill 2d 517 [showing performance tests where defendant charged with driving under influence of alcohol]; People v Fenelon, 14 Ill App 3d 622 [tests for drunken driving]; People v Heading, 39 Mich App 126, supra [lineup]). In People v Ardella, it was held that compliance with Fifth Amendment does not require advance notice of tape recording. The court in People v Fenelon approved of the video portion of the tape recording of the intoxication tests in the absence of prior Miranda warnings. It held that the video tape (excluding the audio portion) constituted only physical evidence. It was not testimonial in nature. In support of this proposition in People v Heading, the defendant’s participation in a video taped lineup was recognized as an aid to the trial court in reconstructing the circumstances in which lineup took place. It was held not to involve testimony or communication by the accused in contravention of his Fifth Amendment rights.
In People v Ardella (supra), the co-ordination tests with answers of defendant were recorded on audio-video tape. The court was of the opinion that there was no infringement of defendant’s Fourth Amendment rights. The court stated that *916 defendant, upon being charged with drunken driving had no justifiable expectation of privacy. Since defendant was given his Miranda warnings, both the recordings of his voice and statements were admissible and not violative of either the Fourth or Fifth Amendment.
The defendant’s fundamental right under the Sixth Amendment to confront his witnesses at trial cannot be abridged by a video taped lineup without the testimony of the identifying witness. The introduction of the video tape showing identification of the defendant by an absent witness would be a denial of defendant’s right to confront and cross-examine the witness at the trial. In People v Heading (supra), the court held that the video tape was admissible only as corroboration and supplemental to a witness’ "live” testimony.
The question may arise in future whether the video tape is of such prejudicial nature as to infringe on defendant’s due process. Certainly such issue can adequately be dealt with at the trial and if necessary the appellate courts. Their rulings should not affect the basic principle relating to the admissibility of admitting the video tapes under prescribed guidelines in the court’s inherent discretion. (See People v Garland, 44 Mich App 243.)
The doctrines established by other States lead me to believe that the utilization of video tape with particular reference to the areas of confessions, depositions, intoxication-co-ordination tests and lineups would not present any serious constitutional or statutory issue in New York State. The introduction into evidence of such device might raise some procedural questions. But none so difficult that it is beyond the capabilities of solution by the Bar and Bench. As was noted, the constitutional rights against self incrrimination, (5th Arndt), to confront witnesses (6th Arndt), to privacy (4th Arndt) are potentially better protected through the video tape process.
Support for admission into evidence of video tape can best be demonstrated by reference to the admissibility of other forms of physical and real evidence. There is a long history of authoritative New York State decisions on the admissibility into evidence of land maps (Curtiss v Ayrault, 3 Hun 487); photographs (People v Buddensieck, 103 NY 487; Cowley v People, 83 NY 464; Stiasny v Metropolitan St. Ry. Co., 58 App Div 172, affd 172 NY 656; Saporito v City of New York, 14 NY2d 474; Delgado v Pasternak, 22 AD2d 799; People v Byrnes, 33 NY2d 343; see, also, 21 NY Jur, Evidence, § 355 et
*917 seq.); motion pictures (Boyarsky v Zimmerman Corp., 240 App Div 361; see 8 Am Jur, Proof of Facts, p 153; 62 ALR2d 686); wire-sound recordings (Frank v Cossitt Cement Prods. Co., 197 Misc 670); and more recently, sound-tape recordings (People v Lubow, 29 NY2d 58; People v Velella, 28 Misc 2d 579; People v Sacchitella, 31 AD2d 180; United States v McKeever, 169 F Supp 426; People v Goldberg, NYLJ, April 7, 1976, p 13, col 4; see 17 Am Jur, Proof of Facts, p 1) after proper foundation has been laid. Such precedents and reasoning, particularly in the analogous cases of motion picture evidence, can with equal validity be applied to the admissibility of video tape in evidence. (Cf. People v Gucciardo, 77 Misc 2d 1049.) Wigmore, Evidence (3d ed, vol 3, p 203, § 798a) referring to the reliability of motion pictures (not artificially reconstructed, i.e., taken at time and place of actual event) stated: "[I]t is entitled to be admitted on the same principles as still photographs. The only circumstance then to be considered is that in a few matters, such as speed and direction of human movement, or relative size in the focus, the multiple nature of the films requires special allowances of error to be made; but these allowances are no different in kind from the elements of error inherent under certain conditions in still photographs.” The use of motion pictures have been sanctioned in civil and criminal cases in various jurisdictions, when relevant and material to the issues litigated upon established proof of its authenticity, accuracy and reliability. (Boyarsky v Zimmerman, supra; Haley v Hockey, 199 Misc 512; Commonwealth v Roller, 100 Pa Super Ct 125.) Where the film was authenticated, the court in Commonwealth v Roller (supra) stated that such motion pictures portraying defendant’s confession were no longer a novelty and the principles that underlie their admissibility in evidence are the same as those governing the admissibility of photographs. (See People v Dabb, 32 Cal 2d 491.) The court must consider the following on the question of foundation: (1) identity of subject matter; (2) qualifications of operator who filmed the video or one who was participant in the recording; (3) authenticity and accuracy — portrayal of a true, fair and accurate representation of events, people and/or scene depicted; (4) type and quality of film and video equipment; (5) manner of developing; (6) continuity of possession; (7) explanation of distortions or changes or editing; and (8) technical imperfections.
In the absence of a proper foundation exhibiting to court’s *918 satisfaction that the movie or video tape offered is a true, fair and accurate representation of the events, people, or scene depicted, it should be excluded. (See Hendricks v Swenson supra; United States v McKeever, supra.) The introduction of proof attesting to the authenticity of the proposed video evidentiary matter may be made by the photographer, or technician or engineer, or by any one who observed the events depicted (Sparks v Employer, 83 So 2d 453 [La]; State of Washington v Newman, 4 Wash App 588; Paramore v State of Florida, 229 So 2d 855 [Fla]; see 60 ALR3d 347, 348 et seq.; People v Byrnes, supra; cf. Boyarsky v Zimmerman, supra).
As previously observed, there apparently has not been any reported case in New York dealing specifically with the admissibility of video tape. However, in People v Woodson (87 Misc 2d 575, 580) the court was impressed with the use of video tape stating: "This novel innovation afforded the court the opportunity not only to hear the voice of the defendant but also to observe his apparent physical and mental condition at the time he was being questioned.”
"The object of a judicial investigation is, if possible, to obtain the truth in its fullness and do exact justice * * * The administration of justice profits by the progress of science” (Petruk v South Ferry Realty Co., 2 AD2d 533, 536). This court has made a review of the law in other jurisdictions, as it is applicable to this relatively new scientific device, video tape. In the quest for truth, the court is of the opinion that a significant contribution will be made with the acceptance of this new and beneficial tool of evidence.
Accordingly, the court finds the confession of the defendant voluntary; and further finds no statutory or constitutional barriers to the receipt of the video tape in evidence.