## JOSEPH EDWARD COLBERT v. STATE OF MARYLAND

[No. 1308, September Term, 1976.]

*Decided September 15, 1977.*

The cause was argued before POWERS, MOORE and MASON, JJ.

*Morris Lee Kaplan, Assigned Public Defender,* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Robert S. Rothenhoefer, State's Attorney for Frederick County,* on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

The appellant, Joseph Edward Colbert, was convicted by a jury in the Circuit Court for Frederick County of murder in the first degree, attempted robbery and conspiracy to rob. He was sentenced to a term of life imprisonment for the murder conviction and two concurrent ten year terms for

the attempted robbery and conspiracy to rob convictions. On appeal the appellant contends that:

I. The trial court erred in admitting into evidence the two statements he made on July 15, 1976.

II. The trial court erred in admitting into evidence his video taped statement.

On the evening of July 8, 1976, at approximately 9:30 P.M., the owner of the National Trail Liquors, located on Route 144 in Frederick, Maryland, was fatally shot. Police discovered inside the front door of the establishment a .22 caliber pistol which had been fired twice, and the victim's .38 caliber gun which had been fired four times.

Several witnesses testified that they observed a white tractor-trailer in the vicinity of the National Trail Liquors on Route 144 between 8:00 and 10:00 P.M. A tow-truck operator testified that at 11:00 P.M. he responded to a service call at the Baltimore County General Hospital where he pulled a white tractor-trailer, which was driven by the appellant, out of the mud. Moments before the tractor-trailer had become stuck in the mud, two women observed an injured person get out of the rig and enter the emergency room of Baltimore County General Hospital.

On July 13, 1976 during the course of the investigation, the police interviewed the appellant at his place of employment, the National Truck Rental on Pulaski Highway in Baltimore. Although not in custody, the appellant was advised of his *Miranda* [1] rights and signed a waiver of rights form. The statements made by the appellant at this initial interview were basically exculpatory. However, at the appellant's request, the police made arrangements for him to take a polygraph examination.

On the morning of July 15, 1976, the appellant was transported to the State Police Barracks in Frederick, Maryland. There he was advised of his *Miranda* rights and signed a waiver of rights form. At this point the appellant was neither under arrest nor in custody; he had not been

1. Miranda v. Arizona, 384 U. S. 436 (1966).

fingerprinted nor photographed; and, according to the police officers, he was free to leave at any time. The appellant then gave an inculpatory statement, after which he took the polygraph examination and was formally arrested and charged. The appellant was again advised of his *Miranda* rights and after again signing a waiver of rights form, he gave another statement, which was video taped.

## I.

The appellant argues that the two statements made on July 15, 1976 should have been suppressed because they were not freely and voluntarily given. He contends he made the first statement because he was promised he would be allowed to see the State's Attorney; and, that prior to the second statement, he requested to call a lawyer, but was unable to contact one.

The police specifically denied promising the appellant he would be allowed to see the State's Attorney, and also denied that the appellant requested to call an attorney. They indicated, however, that after the video taped statement, the appellant was advised that the facts of the case would be presented to the State's Attorney. They also indicated that after the video taped statement the appellant requested and was allowed to make a telephone call.

Based upon our independent and constitutional review of the record, we conclude that the challenged statements were freely and voluntarily given, and the court did not err in admitting them into evidence. *Taylor v. State*, 238 Md. 424, 209 A. 2d 595 (1965); *Walker v. State*, 12 Md. App. 684, 280 A. 2d 260 (1971).

## II.

The appellant challenges the admissibility of his video taped confession. Although no Maryland appellate cases have dealt specifically with this issue,[2] several other

---

2. See Tripp v. State, 36 Md. App. 459, 374 A. 2d 384, 397-98 (1977) where this Court found no abuse of discretion by the trial judge in refusing to permit the appellant to show a video taped interview to the jury which was taken during the course of a mental examination while he was under sodium brevitol, a so-called truth serum.

jurisdictions have considered this question, and all of them support the admission of video taped statements. See Annot. entitled *"Admissibility of Video Taped Film in Evidence in Criminal Trial"*, 60 A.L.R.3d 333 (1974).

In *People v. Hayes*, 21 Cal. App. 2d 320, 71 P. 2d 321 (1937), the court held that a sound motion picture of a defendant making a confession to a police officer was admissible. Later cases have analogized video tape to "a motion picture synchronized with a sound recording" and have admitted the video tape. *People v. Heading*, 39 Mich. App. 126, 197 N.W.2d 325, 329 (1972). For example in *Paramore v. State*, 229 So. 2d 855, 858-859 (Fla. 1969), *vacated on other grounds*, 408 U. S. 935 (1972), the court held that the defendant's voluntary confession may be presented to the jury by video tape. The court stated that:

> The rule governing admissibility into evidence of photographs applies with equal force to the admission of motion pictures and video tapes. 229 So. 2d at 859.

Similarly in *State v. Lusk*, 452 S.W.2d 219, 224-225 (Mo. Sup. Ct. 1970), the court held that the presentation to a jury of a properly authenticated video tape of a confession, after the issue of voluntariness has been determined by the trial court, does not infringe upon any constitutional rights. See also *State v. Hunt*, 53 Wis. 2d 734, 193 N.W.2d 858 (1972); *Williams v. State*, 542 P. 2d 554 (Okla. Crim. 1975).

The court in *Hendricks v. Swenson*, 456 F. 2d 503, 506 (8th Cir. 1972) commented on the advantages of video taped confessions, stating:

> [T]hat a video tape is protection for the accused. If he is hesitant, uncertain, or faltering, such facts will appear. If he has been worn out by interrogation, physically abused, or in other respects is acting involuntarily, the tape will corroborate him in ways a handwritten statement would not. Instead of denying a defendant his rights, we believe it is a modern technique to protect a defendant's rights.

The Maryland Court of Appeals in *State v. United Ry. & Elec. Co.*, 162 Md. 404, 418, 159 A. 916 (1932) approved, in the appropriate case, the use of motion pictures to place facts before the jury. Likewise, authenticated tape recordings of conversations were held admissible. *Raimondi v. State*, 265 Md. 229, 288 A. 2d 882, *cert. denied*, 409 U. S. 322 (1972); *McGuire v. State*, 200 Md. 601; 92 A. 2d 582 (1952); *Bey v. State*, 36 Md. App. 529, 373 A. 2d 1291 (1977).

Thus, adopting the description of video tape as stated in *People v. Heading, supra,* "a motion picture synchronized with a sound recording," it is clear there are ample Maryland precedents which would support the admissibility of video taped statements. See also *Reed v. State*, 35 Md. App. 472, 372 A. 2d 243 (1977), where this Court held that voice identification through spectrographic analysis evidence is admissible under proper safeguards.

Once it has been held, as we have held here, that the challenged statements were freely and voluntarily given, their admissibility is no longer in issue. The only question then is, by what mechanism may the State re-create the defendant's words and actions so that the jury may hear and see them. Most commonly this is done by a written record made by the interrogating officer at the time, or by a transcript of stenographic notes. Often, no written record is made, and the interrogating officer may testify orally to what the defendant said and did. In the present case, the defendant's words and actions were recorded by an electronic device which made possible an audio-visual re-creation of what was said and done.

It is the statement itself which has substantive legal significance. The means by which the statement is re-created as evidence before the jury is of secondary importance, provided that its authenticity is reasonably assured. There was no error in permitting the use of the video tape.

The further contention of the appellant, that the video taped statement amounted to a deposition and was inadmissible because it violated provisions of Rule 411 of the Maryland Rules of Procedure, is without merit and requires

little discussion. Maryland Rule 411 does not apply to criminal cases. See Maryland Rule 1 a.

*Judgments affirmed.*
*Costs to be paid by appellant.*