STATE of Iowa, Appellee,

v.

**Jerome DEERING, Appellant.**

No. 63688.

Supreme Court of Iowa.

April 23, 1980.

Kenneth R. Slack, Slack & Isaac, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Jeanine Freeman, Asst. Atty. Gen., Dan L. Johnston, Polk County Atty., and Peter W. Berger, Asst. Polk County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, ALLBEE, and LARSON, JJ.

ALLBEE, Justice.

Jerome Deering appeals from his conviction by a jury of the crime of robbery in the first degree, a violation of sections 711.1 and 711.2, The Code 1979. He maintains in this appeal that trial court erred when admitting into evidence a motion picture film depicting the actual robbery for which he was charged and convicted.

During the early morning hours of January 13, 1979, a Quik Trip store in Des Moines was robbed. The thief, who displayed a hand-gun, ordered the store clerk to open the cash register and remove the money from it. While doing so, the clerk pushed a switch triggering the operation of a hidden motion picture camera. The camera was located behind and about one foot above the clerk's head, and was aimed so as to photograph in the direction of the clerk's view as he faced the thief. The same switch also activated a computer which summoned the police. The thief fled the store after obtaining money from the clerk. About one-half hour later, defendant was apprehended at an apartment house a few blocks from the store. Footprints in fresh-fallen snow led police from the vicinity of the store to the apartment dwelling where defendant, a hand-gun and loot from the theft were found. While at the site of his arrest, defendant was identified by the store clerk as the robber.

In his trial testimony, the Quik Trip store clerk, who was the robbery victim, explained how he had activated the hidden motion picture camera; he described the camera's location and the field of view to which it was directed; he stated that during the robbery he once looked back and was able to observe that the camera was functioning; he testified that he had viewed the film depicting the robbery prior to giving his testimony. Following this, he further testified that the film "very accurately" depicted what transpired during the robbery; he added that the film portrayed the events as he remembered them. With this foundation, trial court, over defendant's objections, admitted the film into evidence, and it was then shown to the jury by means of projection upon a movie screen. The State offered no other evidence to authenticate the film.

■ On appeal, defendant has narrowed his objections to those which at trial he directed at the foundation laid for the admission of the robbery film into evidence.[1] A motion picture film to be admissible must be authenticated, but we do not believe that this necessitates a particularized methodology. The prevailing view, with which we agree, is that the basic principles which govern the admission of photographs also apply to the admission of motion picture films taken without artificial reconstruction. *E. g., Grant v. State*, 171 So.2d 361, 363 (Fla.1965), *cert. denied*, 384

---

1. At trial, defendant also objected that the prejudicial effect of showing the film outweighed its probative value and that the film evidence was merely cumulative.

U.S. 1014, 86 S.Ct. 1933, 16 L.Ed.2d 1035 (1966); *State v. Strickland*, 276 N.C. 253, 258, 173 S.E.2d 129, 132 (1970) (citations omitted); *People v. Heading*, 39 Mich.App. 126, 132, 197 N.W.2d 325, 329 (1972); *see* 3 S. Gard, *Jones on Evidence* § 17:52, at 359–60 (6th ed. 1972); *McCormick's Handbook of the Law of Evidence* § 214, at 533–34 (2d ed. E. Cleary 1972); 3 C. Scott, *Photographic Evidence* §§ 1291, 1297 (2d ed. 1969); 3 C. Torcia, *Wharton's Criminal Evidence* § 639 (13th ed. 1973); 3 J. Wigmore, *Evidence in Trials at Common Law* § 798a(b) (J. Chadbourn rev. 1970). Thus, a proper foundation for the admission into evidence of a motion picture film demands only that the fidelity of the film's portrayal be established. When, as here, a witness to the event purportedly depicted by the film testifies that the film accurately portrays that event, a foundation has been established upon which the trial court, in the exercise of its sound discretion, may admit the film into evidence. *See Mikus v. United States*, 433 F.2d 719, 725–26 (2d Cir. 1970); *Kortz v. Guardian Life Insurance Co. of America*, 144 F.2d 676, 679 (10th Cir.), *cert. denied*, 323 U.S. 728, 65 S.Ct. 63, 89 L.Ed.2d 584 (1944); *International Union, United Automobile, Aircraft & Agricultural Implement Workers v. Russell*, 264 Ala. 456, 470, 88 So.2d 175, 186 (1956), *aff'd on other grounds*, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); *State v. Woolridge*, 2 Kan.App.2d 449, 450–51, 581 P.2d 403, 404 (1978); *State v. Lacoste*, 256 La. 697, 711–13, 237 So.2d 871, 876 (1970); *State v. Young*, 303 A.2d 113, 116 (Me.1973); *Bremer v. State*, 18 Md.App. 291, 345–46, 307 A.2d 503, 535 (1973), *cert. denied*, 415 U.S. 930, 94 S.Ct. 1440, 39 L.Ed.2d 488 (1974); *People v. Heading*, 39 Mich.App. at 132, 197 N.W.2d at 329; *Richardson v. Missouri-K. T. Railroad*, 205 S.W.2d 819, 822–24 (Tex. Civ.App.1947); *State v. Newman*, 4 Wash. App. 588, 592–93, 484 P.2d 473, 476–77 (1971); *McCormick, supra* § 214, at 533; 3

C. Scott, *supra* § 1297, at 156, 159. *See generally* Annot., 62 A.L.R.2d 686 (1958); 5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 1001(2)[03] (1978); Paradis, *The Celluloid Witness*, 37 U.Colo.L.Rev. 235 (1965). Consistent with our general rule in regard to the admission of photographs, *e. g., Twyford v. Weber*, 220 N.W.2d 919, 924–27 (Iowa 1974), the question of the sufficiency of the preliminary proof offered to identify a motion picture film or to show that it is an accurate representation of the event, person or object which it purports to portray rests largely within the sound discretion of the trial court. *See, e. g., Kortz v. Guardian Life Insurance Co. of America*, 144 F.2d at 679; *International Union, United Automobile, Aircraft & Agricultural Implement Workers v. Russell*, 264 Ala. at 470, 88 So.2d at 186; *State v. Woolridge*, 2 Kan. App.2d at 450, 581 P.2d at 404; *State v. Lacoste*, 256 La. at 713, 237 So.2d at 876; *State v. Newman*, 4 Wash.App. at 593, 484 P.2d at 477.

■ Defendant, on the other hand, argues that a proper foundation requires that the State establish a continuous chain of custody of the film's handling. In conjunction with this asserted prerequisite, he would have us invoke a stringent series of foundational requirements that call for the testimony of persons with competence and knowledge of the particular camera mechanism, film, speed, exposure, development and possible editing of the film.[2] These requirements apparently stem from defendant's concern of dangers of film editing, doctoring, splicing and deletions.

As is evidenced, however, by a plethora of authority, such foundational requirements are now almost universally rejected as unnecessary where there is presented satisfactory evidence of the integrity of the motion picture film's portrayal. *See, e. g., Mikus v. United States*, 433 F.2d at 725; *Paramore*

---

**2.** The foundational requirements advocated by defendant would be appropriate where an automatic camera has filmed an event to which there are no available witnesses. *E. g., United States v. Taylor*, 530 F.2d 639, 641–42 (5th Cir.), *cert. denied*, 429 U.S. 845, 97 S.Ct. 127, 50

L.Ed.2d 117 (1976) (automatic camera activated after bank personnel were locked in the vault—contact prints made from the film of the robbery were admissible upon sufficient authentication).

v. State, 229 So.2d 855, 859 (Fla.1969), vacated as to death sentence only, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972); 3 C. Scott, supra § 1297, at 159; Weinstein, supra ¶ 1001(2)[03], at 1001–35 (citing Paradis); Paradis, supra, at 238. This is because ample protection against film falsification or misrepresentation lies in the requirement of preliminary proof that the picture projected from the film be an accurate reproduction of the event which it depicts and in the opportunity for cross-examination of the witness providing such proof. International Union, United Automobile, Aircraft & Agricultural Implement Workers v. Russell, 264 Ala. at 470, 88 So.2d at 186; cf. United States v. Craig, 573 F.2d 455, 478–79 (7th Cir. 1977), cert. denied, 439 U.S. 820, 99 S.Ct. 82, 99 S.Ct. 83, 58 L.Ed.2d 110 (1978) (chain of custody for tape recordings not required where there was sufficient evidence that they were authentic); State v. Zaehringer, 280 N.W.2d 416, 421–22 (Iowa 1979) (noting difference between foundational showing for photographs and other demonstrative evidence for which chain-of-custody foundation is required).

In sum, a proper foundation laid for the accuracy of what the film portrays obviates the need to establish a chain of custody to demonstrate its authenticity. Defendant, in any event, makes no claim that any falsification or misrepresentation actually occurred here.

We are abundantly satisfied that trial court did not abuse its discretion when admitting into evidence the motion picture film depicting the robbery.

AFFIRMED.