■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTHUR BRANCH, Appellant.—Kane, J. Appeals (1) from a judgment of the County Court of Albany County (Harris, J.),

rendered September 4, 1984, upon a verdict convicting defendant of the crime of criminal possession of a forged instrument in the second degree, and (2) by permission, from an order of said court, entered September 4, 1984, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment, after a hearing.

Defendant was indicted on January 20, 1984 for criminal possession of a forged instrument in the second degree (Penal Law § 170.25). The indictment alleged that on or about October 15, 1983, defendant possessed a forged check, drawn on the bank account of Lois Grady, at the Chess King store located in Colonie Center in the Town of Colonie, Albany County.

Cheryl Miller* and the manager of Chess King, James Peters, testified at trial that Miller entered the store on October 15, 1983 to pick up a coat defendant had placed on lay-away in his name after previously paying a $10 deposit. When store personnel were unable to find the coat, Miller got defendant from a pizzeria next door to Chess King and defendant entered Chess King and tried on another coat. Miller testified that defendant then stated that: "My girl Lois is going to pay for it with a check", referring to Miller, who paid the balance of the cost of the coat with one of Grady's checks, after forging Grady's signature and using Grady's driver's license and Texaco credit card for identification. At the time Miller paid for the coat with Grady's check, defendant was standing next to her and defendant subsequently took the coat from the counter after it was paid for.

Miller also testified that she and defendant had been involved in numerous transactions, which they called "bank busting", in which defendant would get stolen checks and then Miller would forge and cash them after they had depleted the money in the underlying bank accounts. Miller asserted that it was defendant's idea to forge the checks and that, when she hesitated to continue forging the checks, defendant would scream at her, slap and kick her and burn her with a cigarette. Miller stated that, before the incident at Chess King, defendant came to their apartment with Michele Webster and another man, and that defendant had Grady's checkbook and identification and told Miller that they were going to "bust the bank". Miller testified that the four of them

---

* As a result of her involvement in this case, Miller was arrested and charged with, *inter alia,* forgery in the second degree; she received a plea bargain in which she agreed to testify against defendant.

then went out and depleted the funds in Grady's bank accounts pursuant to defendant's instructions.

Webster testified as to how she, along with others, took Grady's checkbook, identification and card. She stated that she was not sure if the checks had been given to defendant or how Miller got them, although in a prior statement she indicated that defendant had possessed Grady's checkbooks at one time. She also testified to depleting Grady's bank accounts with Miller. Lois Grady identified Webster at trial as being in her presence the night she lost her checkbooks and identification.

At the close of the evidence, the jury found defendant guilty. Subsequently, Webster recanted her testimony and a motion was made to vacate the judgment. After hearing, County Court denied the motion. After a persistent felony hearing, the court found defendant a persistent felon and as such sentenced him to a term of 20 years to life imprisonment. This appeal ensued.

At the time of his indictment, defendant was already in Schenectady County Jail for violating his parole. After these charges, but apparently before his final parole revocation hearing, defendant made a telephone call to State Police Investigator Edmund Girtler inquiring about the criminal charges pending against him as a result of the forgery at Chess King. Girtler taped this conversation and, after a hearing, County Court denied defendant's suppression motion. The tape was subsequently played to the jury.

We find that introduction of the tape recording was error. During the suppression hearing and at trial, defendant sought suppression or redaction of certain portions of the tape recording because it contained references to other crimes and other allegedly prejudicial material. After reviewing the tape, we conclude that suppression was necessary. In the taped conversation, Girtler stated that he had been investigating defendant for "forgeries and all that shit", had enough evidence to charge defendant with forgery, that "word was on the street for a long time that credit cards or checks had to go any place they went to [defendant]". Girtler also informed defendant that he had defendant "by the short hairs" and had enough evidence of incidents involving defendant at Macy's, Sears and in Saratoga County. Indeed, absent these highly prejudicial statements made by Girtler, the tape had no probative value and should not have been admitted (cf., People v Ely, 68 NY2d 520). Such error denied defendant a fair trial and, accordingly, we must reverse and order a new trial.

Because this issue may be expected to arise again upon a new trial, we comment briefly on defendant's assertion that Miller's testimony as to defendant assaulting her, receiving stolen checks and "bank busting" was inadmissible. In the instant case, the evidence of the "bank busting" schemes and defendant receiving stolen checks was clearly probative of the crime defendant was charged with and outweighed possible prejudice because it established a pattern of similar crimes which showed defendant's intent to partake in the forgery scheme when such intent could not easily be inferred from the incident alleged in the indictment. Miller's testimony as to defendant assaulting her was also admissible because it related to defendant's intent to control and continue the forgery scheme which led to the instant charge. Therefore, County Court properly allowed Miller to testify to these events (see, People v Ely, supra, at 529-530; People v Ventimiglia, 52 NY2d 350; People v Gerks, 243 NY 166).

Finally, we find that County Court's Sandoval ruling was proper.

Judgment and order reversed, on the law, and matter remitted to the County Court of Albany County for a new trial. Mahoney, P. J., Kane, Main, Weiss and Mikoll, JJ., concur.