THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES RICHARDSON, Appellant.

Third Department, May 12, 1988

APPEARANCES OF COUNSEL

*Oliver & Oliver (Lewis B. Oliver, Jr.,* of counsel), for appellant.

*Sol Greenberg, District Attorney (Cheryl F. Coleman* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J.

Defendant was indicted on various counts of promoting prostitution in connection with his involvement with Diane Lyman and a 15-year-old girl during October and November 1982 at the Skylane Motel in the Town of Colonie, Albany County. Based upon statements made by Lyman and the girl, Detectives Alden Manion and Joseph Hedgeman of the City of Albany Police Department went to defendant's house for the purpose of effecting a warrantless arrest of defendant. They knocked on defendant's door, identified themselves as police officers and told defendant that they wanted to speak with him. In response, defendant came out the front door, closing it behind him, and the detectives placed him under arrest.

Defendant was then transported to the Detective Division of the Albany Police Department where, after having his *Miranda* warnings read to him, he was interviewed by the detectives. The conversation was taped and played for the jury at trial. Prior to trial, Manion and Hedgeman obtained a search warrant authorizing a search of defendant's home and automobile for pictures of Lyman and the girl, a headboard from a bed and a "pimp stick". In executing the search warrant, the detectives illegally seized a diary and pictures of another woman from defendant's home. Although County Court suppressed the illegally obtained evidence, it ruled that the evidence would be available for impeachment purposes if defendant testified at trial.

Although a number of assertions of error are advanced by defendant, many need not be considered because we find that County Court committed reversible error in receiving the tape-recorded interview into evidence without redaction. Substantial portions of the tape-recorded interview of defendant contained statements about unconnected, uncharged prior criminal and bad acts or unsavory associations, offered for the purpose of establishing defendant's commission of the charged crimes. The bulk of the interview consisted of questions and answers concerning numerous pimps and prostitutes in Sche-

nectady County, ostensibly for the purpose of obtaining evidence of their criminal activities, which had no relevance to the charges against defendant and which revealed defendant's intimacy with this disreputable element of society and thereby provided evidence of guilt by association. The tape also contains admissions of defendant's involvement with prostitutes in 1975, some seven years prior to the crimes charged in the indictment, and reference to the fact that he was in jail on unrelated charges in June and July 1982, just months prior to the subject occurrences. The taped conversation was a rambling, often incomprehensible, discourse covering a period of years with the greater portion of the information being supplied by the police officers' comments and questions and not by defendant's responses.

Proof of prior uncharged crimes may not be offered to show defendant's bad character or his propensity toward crime, but may be admitted only if the acts help establish some element of the crime under consideration or are relevant because of some recognized exception to the general rule. Proof of uncharged crimes may be relevant to show intent, motive, knowledge (absence of mistake or accident), common scheme or plan, or identity of the defendant *(People v Lewis,* 69 NY2d 321, 325). Even these so-called *Molineux* exceptions *(People v Molineux,* 168 NY 264) are subject to further limitation. Of greatest relevance here is the requirement that the evidence not only be probative of the crime charged, but also that its probative value outweigh its potential for prejudice *(see, People v Ely,* 68 NY2d 520, 529).

We cannot see that defendant's familiarity with pimps and prostitutes and his own experience "in the life" in 1975 is relevant to show (1) intent, since intent can be inferred by the very act of promoting prostitution, (2) motive, as the motive for promoting prostitution is obviously financial reward, (3) knowledge, because one could hardly promote prostitution by mistake or accident, (4) common plan or scheme, as there is no evidence of a common scheme or plan to commit a series of crimes including the ones for which he is being tried *(cf., People v Branch,* 128 AD2d 950, 953), or (5) identity, since identity is not in issue here. Further, even if relevant to prove some element of the crimes charged, the subject evidence should have been excluded because of its limited probative value when compared to its potential for prejudice and the unacceptable danger that the jury might condemn defendant because of his past criminal behavior and associations and not

because he is guilty of the offense charged *(see, supra,* at 952; Richardson, Evidence § 170, at 139 [Prince 10th ed]). Further, the evidence of poor character could not be admitted because the prosecution may not prove defendant's bad character unless and until defendant has introduced evidence of his good character *(see,* Richardson, Evidence § 150, at 121 [Prince 10th ed]). At the time when the evidence was offered and received, defendant had offered no evidence at all.

Since the few relevant and admissible references to defendant's involvement with Lyman and the 15-year-old girl were easily separable from the balance of the tape, there was no reason not to redact this prejudicial, irrelevant and improper evidence *(see, People v Crandall,* 67 NY2d 111). Further, in view of the content of the conversation and the prosecutor's extensive reference to the improperly admitted portions in his summation, the error cannot be considered harmless *(see, People v Crimmins,* 36 NY2d 230). Accordingly, the matter must be remitted for a new trial.

Because the issues may be expected to arise again, we comment briefly on some of defendant's other contentions. The contention that the warrantless arrest of defendant was unlawful may be disposed of summarily as we have recently held that a warrantless arrest outside of the home is lawful even when a defendant is induced to leave the home by noncoercive subterfuge *(see, People v Roe,* 136 AD2d 140, 143 *see also, People v Kozlowski,* 69 NY2d 761, 763), although we are not at all convinced that duplicity was employed here. With respect to employment of the diary and photos for impeachment purposes, it should be noted that a finding that such use is not prohibited by their illegal seizure *(see, United States v Havens,* 446 US 620) is not equivalent to a finding that they are legally admissible. Impeachment by evidence of prior or subsequent acts of promoting prostitution found in the diary could well have the effect, as did the improperly admitted tape recording, of proving defendant's commission of the charged offenses by evidence of similar crimes or bad acts *(see, People v Ocasio,* 47 NY2d 55; *People v Dickman,* 42 NY2d 294; *People v Sandoval,* 34 NY2d 371). Further, the greater part of the diary and the photographs would seem irrelevant to any possible issue raised at trial. However, we cannot anticipate the evidence which shall be offered upon retrial of defendant and shall not, accordingly, rule that the material contained in the diary and photos cannot be used on cross-examination under any circumstances. That determination will be left to County Court's

discretion based upon the factual setting then present. The search warrant had no discernible probative value, and its admission into evidence should have been denied as irrelevant. Finally, viewing such of the evidence as was properly admitted in a light most favorable to the People *(see, People v Marin,* 65 NY2d 741, 742) and considering that it is the province of the jury to assess the credibility of witnesses *(see, People v Ianniello,* 36 NY2d 137, 142, *cert denied* 423 US 831), we conclude that there is sufficient evidence to support the jury's verdict.

KANE, J. P., WEISS, LEVINE and HARVEY, JJ., concur.

Judgment reversed, on the law, and matter remitted to the County Court of Albany County for a new trial.