OPINION OF THE COURT
Peter Tom, J.
On October 18, 1988, two undercover police officers went to the premises in issue to make a cocaine buy as part of a narcotics investigation. They were escorted into the apartment *392 by respondent, the tenant-of-record, together with a reputed drug dealer. There was another dealer already in the apartment waiting for the buyers. As the dealers discussed the sales transaction with the two police officers around a table, respondent stood nearby and witnessed the transaction. As the cocaine was placed on the table, one of the dealers asked the police officers to sniff the cocaine to show that they were bona fide buyers and/or users. When both police officers refused to sniff the cocaine tension filled the room when the drug dealers got suspicious and asked if they were police. One of the drug dealers then produced a gun. The other dealer pulled one of the officer’s shirt up and discovered that he had a gun tucked in his pants. He then grabbed the gun from the police officer’s waist. When respondent witnessed this he ran towards the door in an attempt to flee the apartment. At that moment gunshots rang throughout the apartment. As respondent and one of the drug dealers ran into the street, they were immediately arrested by the police backup team.
The shooting in the apartment resulted in the death of one undercover police officer and a drug dealer.
This gruesome description of what transpired in the apartment of the aborted narcotic buy was told by respondent in an interview by the Manhattan District Attorney’s office the day after the shooting. The interview was entirely videotaped by the Manhattan District Attorney’s office.
Petitioner brought this summary holdover proceeding against respondent on the ground that respondent and/or others acting with respondent’s knowledge and consent have been unlawfully using the subject premises for an illegal trade or business pursuant to Real Property Law § 231 (1).
Respondent and the arrested drug dealer both have been indicted for homicide and related charges. The criminal trial against respondent is forthcoming. Since the Manhattan District Attorney’s office did not wish to jeopardize the criminal trial by having the surviving undercover police officer testify in this civil proceeding, petitioner sought to introduce the videotape of respondent’s interview into evidence in support of the petition.
The main issue in this inquest hearing is whether the videotape of respondent’s interview which contains certain admissions made by respondent is admissible in evidence.
A videotape is a motion picture synchronized with audio sound, transformed and recorded on a tape for later broadcast. *393 Videotape evidence is real, demonstrative and physical evidence and being such is admissible evidence once a proper foundation has been laid. (People v Tunstall, 63 NY2d 1; People v Higgins, 89 Misc 2d 913; Richardson, Evidence §§ 127, 128 [Prince 10th ed].) The court has wide discretion in admitting videotape evidence.
The party offering videotape evidence must show that the tape is a true, authentic and accurate representation of the event taped without any distortion or deletion before the videotape is admissible.
In this case one of the Assistant District Attorneys who was assigned to the homicide case of the slain police officer and who was present at the interview laid the foundation for the introduction of the videotape. He testified that on October 19, 1988 he was summoned to the 24th Precinct to get a videotaped statement of respondent concerning the killing of an undercover police officer. He was present for the entire interview and has viewed the tape at least 3 to 4 times. He testified that the videotape is a complete and true reproduction of the interview of respondent as he personally witnessed it. There was no alteration or deletion of the tape.
The picture of the videotape was clear and the sound was audible. The camera at all times focused on respondent as he spoke.
Since an admission is a voluntary declaration by a party which constitutes evidence against such party and the videotape contained admissions by respondent, petitioner had to lay a foundation that the statements made by respondent were freely given.
Respondent was given the Miranda warnings before the interview was conducted. The Assistant District Attorney who conducted the interview informed respondent of his rights and that the entire interview was being videotaped. Respondent stated that he wished to make the statements at that time without the presence of an attorney. The tape showed that respondent on his own volition made the statements to the Assistant District Attorney.
The court found that a proper foundation had been laid by petitioner for the introduction of the videotape. The videotape which was made with respondent’s consent and contains respondent’s statements and admissions was admissible evidence. (See, People v Bonilla, 101 Misc 2d 146; People v Higgins, supra.) The transcript of the tape was also admitted *394 into evidence after the court had compared it with the taped interview, and found it to be accurate.
Respondent, who has lived alone in this city-owned apartment for 5 Vi years, stated in the interview that approximately two months before the shooting he sold the subject apartment to an individual known as Matolda for $3,000. However, it appears that respondent retained possession of the apartment at all times since he continued to use the apartment and slept there occasionally after the alleged sale, and kept all his personal belongings and furnishings there including a pet dog. Respondent stated that at first he thought Matolda was using the apartment for residential purposes but later learned that other individuals were utilizing the premises to conduct an illegal drug trade.
Although respondent denies any personal involvement in the illegal drug operation in the premises or the killing of the police officer in the apartment, he does admit to having knowledge of the continued illegal drug activities in the subject premises.
Pursuant to RPAPL 715 and Real Property Law § 231 (1) a lessee does not have to be personally involved with the illegal trade or business in the premises to be subject to an eviction proceeding.
RPAPL 715 and Real Property Law § 231 (1) provide that whenever a lessee or occupant shall "use or occupy” demised premises in whole or in part for any illegal trade, business or manufacture such lessee shall forfeit his or her right to the premises.
That portion of the statute which provides that the lessee who occupies premises for any illegal trade or business is subject to an eviction proceeding denotes that a lessee who has knowledge of the illegal trade or business being conducted in the premises and permits the premises to be used for such illegal purpose is also subject to an eviction proceeding.
In this case, respondent had knowledge that the occupants used the subject premises to sell cocaine for approximately two months and never objected to the illegal use. He admits to having witnessed different drug sale transactions while he was present in the apartment. Respondent knew that the two men, whom he was not aware to be police officers until after the shooting, came to the apartment to buy drugs. He opened the door for them and escorted them into the apartment to make the drug transaction. He was present during the negotiation *395 of the drug buy. Respondent’s assertion that he was not involved with the drug operation is questionable based upon his own statements.
However, it is clear from respondent’s statements and admissions made at the interview that he permitted the occupants to use the premises for the sale and storage of narcotics and received monetary consideration for such illegal use. Respondent’s conduct has violated the terms of the tenancy thereby forfeiting his right to the apartment pursuant to Real Property Law § 231 (1).
Accordingly, the court renders a final judgment of possession in favor of petitioner against all the respondents with issuance of warrant forthwith.