*277 OPINION OF THE COURT
Eugene L. Nicandri, J.
Defendants are charged with rape in the first degree and sexual abuse in the first degree. The event in question is alleged to have happened after hours at the Casablanca restaurant in Gouverneur, New York, while the complaining witness was incapable of consent by reason of being physically helpless.
Five men were originally indicted and charged with a single count of rape in the first degree. A plea bargain was arranged, resulting in pleas in local court, followed by a dismissal of the pending County Court indictment. The Governor of this State appointed the Attorney-General to supersede the District Attorney in order to look into the possibility of further proceedings with respect to the case. The Attorney-General successfully moved to reinstate the indictment, and this court found that the preceding pleas in local court were a nullity. The reinstated indictment was superseded by the present indictment.
After completion of the local court pleas and sentence, and before reinstatement of the indictment, defendant Curcio consented to be interviewed by a television news correspondent from NBC.
On June 3, 1996 the court directed that there be an evidentiary hearing to determine whether a videotaped television interview of defendant Curcio could be used at trial, as part of the People’s case. The prosecution contends that the videotape contains admissions by defendant Curcio. This hearing was conducted on June 11, 1996. The prosecution called two witnesses. The first, Michelle Clifton, is the free-lance audio technician who was present during, and who supervised, the audio recording aspects of all of the videotaped interviews.
The interviews took place over two days in August 1993. Defendant Curcio was interviewed on the first day by NBC producer Elizabeth "Betsy” Osha, who also testified at this hearing. On the second day defendant was interviewed by news correspondent Katie Couric.
Through the regular process of editing the tape recorded interview material for broadcast purposes, the approximately two to three hours of interviews with the defendant were distilled down to approximately 14 minutes of material which was broadcast. Of the 14-minute segment of the program dealing with this event, approximately four minutes contained *278 questions to, or statements by, defendant Curcio. NBC personnel adjusted the sequencing and emphasis of some portions of the material, and deleted substantial portions of it. The material was also interspersed with questions asked to, and answers given by, other persons.
The court finds that, at least inferentially, there was no police or law enforcement involvement in the editing or production of the videotaped material. The outtakes, meaning the-portions of the taped interviews which were not broadcast, are not available. They were erased by the process of degaussing, which removes the magnetically stored data on the tapes, allowing them to be reused for other purposes. The audio components of the interviews were not separately recorded; this was done as part of the videotape process, on the videotape equipment. Whatever network notes, memoranda or transcripts there may once have been concerning the outtakes no longer exist.
The court is satisfied that the taped statements claimed to have been made by defendant Curcio are fair and accurate records of statements he made to the interviewers.
The court is not persuaded, however, as to the relevance and materiality of the particular Curcio statement, heavily emphasized in the broadcast tape, that "It was not a rape. The truth is that it was a gang bang. Gang bangs have been going on since the turn of the century.” Because of the manner in which the videotaped interview was edited for broadcast, it is unclear either from the tape itself or from the transcript, what question was posed to defendant Curcio that produced the quoted response. Ms. Osha, who obtained the quoted statement, could not recall the question she had asked. The statement is, in itself, also a characterization of conduct, rather than a statement of facts. It is therefore impossible for the court to determine either the relevance or the materiality of the quoted response to an unidentified question. The statement seems to the court to be susceptible of several interpretations. It may variously be viewed as an admission, a partially exculpatory comment, or an immaterial statement. Of course in the context of the trial it is potentially inflammatory. As the hearing revealed, there would be no effective way for the defense to cross-examine any prosecution witness as to the circumstances of the statement, in order better to understand its context.
In this instance the court must balance the People’s right to introduce admissions, assuming a proper foundation, against the defendant’s right of cross-examination.
*279 As a general proposition, audiotapes are admissible in evidence when the foundation shows that they are audible and authentic. Authenticity may be established by testimony from a party or a witness to the recorded conversation, establishing that the tape is unaltered and that it completely and accurately reproduces the conversation. With respect to audiotapes this may also be done by expert testimony establishing completeness, accuracy and lack of alteration, or by chain of custody of the tape. (See generally, People v Ely, 68 NY2d 520 [1986]; Prince, Richardson on Evidence §§ 4-213, 4-214 [Farrell 11th ed].)
In Ely (supra), which was an audiotape case, the Court of Appeals reversed the conviction and ordered a new trial where the admitted tape was shown to be incomplete, containing only portions of the conversation. Conversely, where the foundation for authenticity and completeness is laid, the audiotapes are properly admitted. (See, People v Arena, 48 NY2d 944 [1979] [victim’s uncontradicted testimony that recording of her conversation with defendant was fair and accurate]; People v McGee, 49 NY2d 48 [1979] [police officer wore hidden wire during meetings with defendant and testified, that he was present, that tapes were accurate and not altered]; People v Keller, 194 AD2d 877 [3d Dept 1993] [police officer testified that he heard victim’s end of taped phone call at time of call; listened to entire tape before securing it, and again before testimony, and attested to tape being unaltered]; People v Craver, 191 AD2d 817 [3d Dept 1993] [defendant’s postarrest statement to reporter, in which he admitted killing his wife, admissible as admissions].)
Where an audiotape is prejudicial and has no probative value, it is error to admit it into evidence. (People v Branch, 128 AD2d 950 [3d Dept 1987].)
In this proceeding, no issue has been raised concerning any attempt to subpoena the outtakes, nor has any person invoked the Shield Law (Civil Rights Law § 79-h) before the court.
Generally speaking, videotaped admissions by defendants are admissible in New York criminal trials. (People v Tunstall, 63 NY2d 1 [1984]; People v Martinez, 111 AD2d 875 [2d Dept 1985].) As in Martinez, these usually involve statements made to, and taped by, law enforcement officials.
The proponent of videotape evidence "must show that the tape is a true, authentic and accurate representation of the event taped without any distortion or deletion”. (City of New York v Prophete, 144 Misc 2d 391, 393 [Civ Ct, NY County *280 1989].) In Prophete, an Assistant District Attorney videotaped an interview with a tenant who was under indictment for homicide and other charges. The cited case arose in the context of a related eviction proceeding. The authenticating witness testified that he had personally witnessed the entire interview and that the taped version of it was complete and unaltered.
In the present case the videotape which was broadcast was clearly the product of editorial alteration of the videotaped source interviews. Yet the statements contained in the videotape were attested to as being accurate and complete. Moreover, the alterations were not shown to have been made by, or even with the knowledge of, any law enforcement personnel. Neither the parties nor the court have located New York cases which directly address the admissibility of videotaped admissions under such circumstances. The prosecution has cited the court to two non-New York cases which hold, essentially, that the nonlaw enforcement editing of videotaped material affects its weight, rather than its admissibility. (See, State v Woolridge, 2 Kan App 2d 449, 581 P2d 403 [1978]; Donahoo v State, 505 So 2d 1067 [Ct Crim App 1986] [Ala].) The defense objects to admission of the tape, citing its claimed inflammatory content, its editorial alteration from the source interviews, and lack of adequate foundation.
Here the prosecution proposes to redact the broadcast videotape so as to exclude any material which does not include a question to, or statement by, defendant Curcio.
After due consideration of the testimony of the witnesses and review of the memorandum of law submitted by the prosecution and the defense objection to the offered exhibit, it is hereby ordered that:
1. The statement attributed to defendant Curcio on page 8 of the transcript submitted with the moving papers, "And don’t consent that to rape, period!” and the words on page 9, lines 6 through 9, are to be redacted and are inadmissible because by the court’s reading they refer to the previous proceedings in local court. The prosecution stipulated, and this court ordered, that no reference may be made to those proceedings in this trial.
2. The words attributed to defendant Curcio, "It was not a rape. The truth is that it was a gang bang. Gang bangs have been going on since the turn of the century,” appearing on pages 1 and 10 of the transcript attached to the moving papers, are to be redacted.
3. Any questions to, or statements by, any person other than defendant Curcio are to be redacted.
*281 4. As so redacted, a revised tape which is otherwise a complete copy of the questions to, and statements by, defendant Curcio as contained in the tape that was broadcast, is admissible in this trial.
5. The prosecution must still lay a foundation before the jury at trial at the time of offering the redacted tape in evidence, and has consented to submit for review by the court and counsel a redacted transcript to accompany the redacted videotape, as an aid to understanding the videotape.